802 So.2d 1280 (2001)
STATE of Louisiana
v.
Wilbert RIDEAU.
No. 2001-KK-3146.
Supreme Court of Louisiana.
November 29, 2001.
PER CURIAM.[*]
Defendant has filed a writ of certiorari to this court claiming that the method of allotment of judges in the Fourteenth Judicial District Court in capital cases can be improperly influenced by the District Attorney. We find merit in the application.
Because the District Attorney has the ability, by process of elimination, to know the final judge in the pool to be assigned the next numbered capital case, and because the district attorney has the right to assign the case number in capital cases when indictments are handed down, in this case the system currently in use in the Fourteenth Judicial District Court violates the principles we adopted in State v. Simpson, 551 So.2d 1303 (La.1989).
Accordingly, defendant's application for relief as to the manner of allotment of the trial judge in his case is granted. The rulings of the lower courts are set aside and the case is remanded to the trial court with instructions that all judges in Fourteenth Judicial District be put into the capital allotment pool and this case be assigned at random by the Clerk of Court to the judge whose number is randomly drawn from the pool.
KNOLL, J., dissented and assigned reasons.
TRAYLOR, J., recused.
KNOLL, Justice, dissenting.
"To meet due process requirements, capital and other felony cases must be allotted for trial to the various divisions of the court, or to judges assigned criminal court duty, on a random or rotating basis or under some other procedure adopted by the court which does not vest the district attorney with the power to choose the judge to whom a particular case is assigned." State v. Simpson, 551 So.2d 1303, 1304 (La.1989). (Emphasis added). It is clear to me that the lottery system[1] employed in Calcasieu Parish by the Clerk of Court is both random and rotating among the district judges. Neither is the District Attorney's office involved in the selection process nor is the District Attorney's office capable of manipulating the *1281 selection process. No one, including the District Attorney, can predict the order in which district court judges are assigned to criminal cases. Albeit that anyone could have determined that Judge G. Michael Canaday would end up being the last ball in the hopper and would be assigned the next capital indictment, it cannot be gainsaid that the selection procedure was random.
The majority fails to recognize in its zealous effort to micro-manage the criminal process in Calcasieu Parish that Simpson requires that the District Attorney not have the "power to choose the judge." Simpson, 551 So.2d at 1304. Here, the balls fall out of the machine randomly, allotting capital cases over the seven judges until all seven judges are assigned a capital case so no one trial judges gets more capital cases than any other. Apparently, this was done to avoid overcrowding a judge's docket who may draw more than one capital case if the cases were not randomly assigned this way. The District Attorney does not have input as to how the balls fall out of the hopper. The majority finds a violation of Simpson because the District Attorney knows which judge is left when there is one ball left in the hopper and the District Attorney has more than one capital case for assignment. I fail to see how this simple knowledge of what judge is left amounts to a violation of random allotment. The system of spreading the capital cases among the seven judges was both random and rotational. The District Attorney does not choose which judge is the last one to be assigned a capital case. Significantly, Simpson's requirements are directed at the District Attorney not choosing the judge. The majority misapplies and broadens Simpson by requiring that Simpson also applies to the discretion of the District Attorney to determine "whom, when, and how he shall prosecute" and when he can indict. LA.CODE CRIM. PROC. ANN. art. 61.
In my view, the scope of Simpson was neither intended to have the far reaching results the majority imposes today, nor to infringe on the District Attorney's discretion in the indictment process. For these reasons, I respectfully dissent.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.
[1] The method provided as follows:

All capital cases shall be assigned utilizing a lottery method wherein each division of the court, in rotation (excluding the domestic division) shall be assigned a ball. These balls will be placed in a machine operated by the Clerk of Court who, upon filing of indictment, will draw a ball therefrom for the capital case pending. This drawing is to commence immediately with pipeline cases drawn chronologically by date of indictment. After each selection, the ball drawn will be removed from the machine until all balls have been exhausted whereupon the entire process will begin again.