SANDRA CABRINA JENKINS, Judge.
_JjErik Nunez and Brandon Licciardi each seek review of the trial court’s judgment denying his motion to quash allotment. Nunez and Licciardi are named as defendants in the same multi-count, multi-defendant bill of indictment allotted to Section “I” of Orleans Parish Criminal District Court. Nunez and Licciardi each filed a motion to quash allotment, to declare the current allotment system uncon *107 stitutional and to order re-allotment.[1] The trial court denied both motions to quash, on January 16, 2015 and April 22, 2015, respectively.
Upon de novo review of the trial court’s judgments in light of our Louisiana jurisprudence, we find the trial court erred in denying the motions to quash allotment. For the reasons set forth below, we grant the writ in part and remand to the trial court for further proceedings consistent with this Court’s ruling.
On a second issue raised solely by Nunez, we deny the writ. Nunez seeks review of the trial court’s January 16, 2015 denial of his motion for bond reduction. Finding no abuse of discretion in the trial court’s denial of the motion for bond reduction, we deny the writ on this issue.
laFACTS AND PROCEDURAL BACKGROUND
On December 12, 2014, the grand jury-returned a nine-count indictment naming Erik Nunez, Brandon Licciardi, and Darren Sharper as defendants.[2] Erik Nunez is named as a defendant in three counts of the indictment, charging him with aggravated rape of D.D. on September 23, 2013; aggravated rape of J.W. on September 23, 2013; and obstruction of justice between September 23, 2013 and February 28, 2014. Brandon Licciardi is named as a defendant in four separate counts of the indictment, charging him with human trafficking of J.B. between July 1, 2012 and August 31, 2012; aggravated rape of M.B. on February 2, 2013; human trafficking of G.D. on August 31, 2013; and human trafficking of D.D. on September 23, 2013. Nunez and Licciardi are not co-defendants on any charge in the multi-count indictment. Upon the filing of the indictment, the case was allotted to Section “I” of Orleans Parish Criminal District Court.
On December 15, 2014, Nunez appeared for arraignment and entered a plea of not guilty to the three offenses charged against him.[3] The trial court set Nunez’s bond at $2,500,000.[4] That same day, Nunez filed a motion to recuse, to re-allot, and to vacate the prior order fixing bail. In his motion, Nunez sought an order re-cusing the trial judge in Section “I” and ordering the Clerk of Court to randomly allot the case. The case was re-allotted to Section “D” for a'hearing on the | {¿motions. On December 22, 2014, the trial judge in Section “D” denied the motion to recuse and transferred the case back to Section
On January 5, 2015, Nunez filed a motion to quash allotment, to declare the current system of allotment unconstitutional, a request for re-allotment, and motion to vacate the prior order fixing bail. In this motion, Nunez challenged the constitutionality of the procedure used by the Orleans Parish Criminal District Court for allotting multi-count, multi-defendant cases. Nunez argued that the current allotment procedure violated Louisiana District Court Rule 14.0 requiring random *108 allotment and due process requirements set forth by Louisiana Supreme Court jurisprudence; and Nunez moved for his case to be randomly re-allotted. In addition, Nunez argued and moved for a bond reduction. The trial court set Nunez’s motions for hearing.
On January 16, 2015, after hearing testimony and arguments, the trial court denied the motion to quash allotment, finding Nunez failed to present evidence that the State actually manipulated the allotment procedure in this case. The trial court also stated it did not find the allotment procedure used by the Orleans Parish Criminal District Court to be unconstitutional. After a separate hearing on Nunez’s bond, the trial court also denied Nunez’s motion for bond reduction. Subsequently, Nunez filed a timely application for supervisory writ seeking review of the trial court’s January 16, 2015 judgment denying both motions.
On April 16, 2015, in consideration of Nunez’s supervisory writ, this Court ordered oral arguments be heard on the issue of the allotment procedure used in Orleans Parish Criminal District Court. This Court also invited the Orleans Parish Criminal District Court en banc to provide a per curiam explaining the procedure for the random allotment of cases.
|4On April 22, 2015, Licciardi filed his motion to quash the indictment and/or strike the allotment system as unconstitutional and order re-allotment.[5] That same day, the trial court adopted the ruling and reasons assigned for denying Nunez’s motion to quash allotment and denied Licciar-di’s motion to quash allotment.[6] On April 28, 2015, Licciardi filed his application for supervisory writ seeking review of the trial court’s ruling denying his motion to quash allotment; he also filed a request for expedited. consideration and consolidation with Nunez’s writ for oral arguments on the issue of the allotment procedure in Orleans Parish Criminal District Court.
On May 26, 2015, this Court En Banc heard oral arguments in both applications for supervisory writs, solely regarding defendants’ motions to quash allotment.
LAW AND ANALYSIS
Motion to Quash Allotment
The issue presented for this Court to review is whether the trial court erred in denying defendants’ motions to quash allotment and in finding the current Orleans Parish Criminal District Court allotment procedure does not violate constitutional due process requirements. We review rulings on a motion to quash involving solely a question of law under a de novo standard of review. State v. Schmolke, 12-0406, p. 4 (La.App. 4 Cir. 1/16/13), 108 So.3d 296, 299. The trial court’s interpretation of a constitutional issue of law is also reviewed de novo.
| State v. Jackson, 14-0655, p. 3 (La.App. 4 Cir. 11/26/14), 154 So.3d 722, 724; State v. Smith, 99-0606, p. 3 (La.7/6/00), 766 So.2d 501, 504.
In both motions to quash allotment, defendants argue that the current allotment procedure used in Orleans Parish Criminal *109 District Court violates constitutional due process requirements because it is not random and it invites manipulation by the District Attorney. Defendants argue that the District Attorney had the ability to choose the oldest date of offense to allege in the indictment with prior knowledge of the section of court to which the case would be allotted. By allowing the District Attorney the ability to choose the allotment of a case to a certain section of court, defendants argue that the Orleans Parish Criminal District Court allotment procedure directly violates Louisiana District Court Rule 14.0, requiring the random allotment of all criminal cases, and Louisiana Supreme Court jurisprudence holding that due process requires a random allotment procedure “which does not vest the district attorney with power to choose the judge to whom-a particular case is assigned.” State v. Simpson, 551 So.2d 1303, 1304 (La.1989); see State v. Payne, 556 So.2d 47 (La.1990); State v. Reed, 95-0648 (La.4/28/95), 653 So.2d 1176; State v. Rideau, 01-3146 (La.2001), 802 So.2d 1280.
Pursuant to La. D.Ct. Rule 14.0, applicable to all Louisiana district courts, “[t]he clerk of court shall randomly allot all criminal cases, unless an exception is established by law or these Rules.” La. D.Ct. Rule 14.0 further provides that the method of random allotment is established by each judicial district court, by en bane order, and is set forth in Appendix 14.0A. The method of'allotment established by Orleans Parish Criminal District Court provides in pertinent part:
The Clerk will assign daily, randomly, and by allotment among the Sections having felony jurisdiction all felony indictments, bills of information charging felony offenses and appeals from Municipal | (iCourt and Traffic Courts and other pleadings shall be allotted among Sections A through L and the Magistrate Section. This allotment shall be conducted by the Clerk and shall be open to the public. The District Attorney shall be notified of the allotment. A computer generated random allotment system be and is hereby implemented by the Clerk’s Office for all’ cases filed with the Clerk of the Orleans Parish Criminal District Court.
La. D.Ct. Rule 14.0, Appendix 14.0A, (as amended effective April 4, 2014).
Defendants .acknowledge that the method of allotment officially adopted by the Orleans Parish Criminal District Court and set forth in La. D.Ct. Rule 14.0, Appendix 14.0A, fulfills the requirement of fandom allotment. Defendants argue, however, that the allotment procedure actually used in Orleans Parish Criminal District Court violates the requirement of random allotment in La. D.Ct. Rule 14.0.
To establish how cases are allotted in Orleans . Parish Criminal District Court, defense counsel called Keith Johnson, the office manager for the Clerk of Court’s office, to testify at the hearing on Nunez’s motion to quash allotment.' Johnson testified that the Clerk’s office receives a daily email from the Judicial Administrator’s office informing him of the computer-generated allotment of a judge for first, second, and third class felony cases and a second judge allotted for fourth class cases. Johnson stated, “that is the day of the Offense that those Judges are allotted for,” and each day’s allotment is recorded on a publicly available calendar that includes historical dates. Johnson explained that the allotment of cases is then determined by the date of the offense indicated in an ■indictment. When the Clerk’s office receives a bill of indictment, Johnson looks at the date of the offense and refers to the publicly available calendar indicating which section of court has been allotted for that date. When asked how he allots an indict *110 ment charging multiple offenses, Johnson stated that he uses the “first day of the first offense,” i.e., the oldest offense chronologically. Johnson stated that the procedure |7using the oldest date of offense is “part of the Judicial Administrator’s office,” but he did not know if it was a published rule. When shown a copy of La. D.Ct. Rule 14.0 and Appendix 14.0A, Johnson acknowledged that the use of the oldest date of offense to allot cases was not part of the official local Rule.
Defendants argue that Johnson’s testimony established that the allotment procedure is subject to manipulation, because the District Attorney has the ability to select the oldest date of offense in an indictment knowing that the selection of that date determines the allotment to a particular section of court, as reflected by the publicly available calendar listing the allotments for each historical date of offense. In this case, defendants point out that them multi-count, multi-defendant indictment was allotted to Section “I” based on the oldest date of offense alleged in only one count of the indictment, charging Licciardi with human trafficking from July 1, 2012 to August 31, 2012. Defendants then argue that there is no evidentiary significance to the starting date of July 1, 2012, or for that entire range of dates;[7] and, rather than not allege any date of offense,[8] the District Attorney chose this particular range of dates for its own purposes knowing which section of court would be allotted this case. Defendants argue the District Attorney was afforded the ability to manipulate the allotment of this case by the current Orleans Parish Criminal District Court allotment procedure; and any such allotment system that vests such power in the District Attorney violates due process requirements |sand is “flatly prohibited by law” pursuant to the Louisiana Supreme Court’s decision in State v. Simpson and its progeny.
In Simpson, the Louisiana Supreme Court held:
Due process of law requires fundamental fairness, i.e., a fair trial in a fair tribunal. To meet due process requirements, capital and other felony cases must be allotted for trial to the various divisions of the court, or to judges assigned criminal court duty, on a random or rotating basis or under some other procedure adopted by the court which does not vest the district attorney with power to choose the judge to whom a particular case is assigned, (citations omitted).
551 So.2d 1303, 1304 (La.1989). In that case, the Court found that the allotment procedure adopted by the 15th Judicial District Court violated constitutional due process requirements because the District Attorney’s office chose the judge to whom the case was allotted. The Court declared the allotment procedure to be “facially unfair” and remanded the matter to the 15th Judicial District Court with instructions to adopt a procedure by which the District *111 Attorney’s office could not select the judge.
The Louisiana Supreme Court reaffirmed its holding in Simpson by striking down allotment rules and procedures in several subsequent cases. In State v. Payne, 556 So.2d 47, 48 (La.1990), the Louisiana Supreme Court found the allotment rules adopted by the 21st Judicial District Court violated due process by allowing the District Attorney to make unchecked motions for trial dates knowing in advance which judge would be presiding on such dates. In State v. Reed, 95-0648, p. 1 (La.4/28/95), 653 So.2d 1176, the Court struck down the allotment procedure of the 19th Judicial District Court that allotted each indictment filed by the District Attorney to the “next judge up” in a numerical rotation and eliminated judges once they were allotted a case. The Court found the procedure “not only invites manipulation of allotments, but also violates the court rule which requires | ¡¡random allotment of each case.” Id. The Court then held that defendant was entitled to the enforcement of the court rule requiring random allotment “without proving actual manipulation in his particular case.” Id. (emphasis in original). Again in State v. Rideau, 01-3146, p. 1 (La.11/29/01), 802 So.2d 1280, the Court found the allotment of capital cases in the 14th Judicial District Court could be improperly influenced or manipulated. There, the District Attorney had the ability» by process of elimination, to know which judge would be allotted the next numbered capital case, and the District Attorney had the power to assign the case numbers for capital indictments. In Ri-deau, as in Payne and Reed, the Court found the allotment procedures in place violated the principles adopted in Simpson, and remanded the case to the district court to adopt random allotment procedures in line with Simpson and to re-allot the case.
Relying on this line of jurisprudence, defendants argue that the Orleans Parish Criminal District Court allotment procedure violates the due process requirement of random allotment and is facially unfair; because, the District Attorney has the ability to determine, even choose, the section of court to which a case will be allotted based on the District Attorney’s selection of the oldest date in the indictment. Defendants further argue that showing the allotment system is subject to manipulation is sufficient proof of the violation of due process requirements; and pursuant to the holdings in Simpson, Payne, Reed, and Rideau, defendants argue they are entitled to enforcement of La. D.Ct. Rule 14.0 requiring random allotment without showing actual manipulation of the allotment in this case.
In response, the State argues that this method of allotting cases by the oldest date-of-offense was upheld by the Louisiana Supreme Court in State v. Cooper, 10-2344 (La.11/16/00), 50 So.3d 115. Citing Cooper, the State argues that due process requires a fair trial and fair tribunal; but due process does not entitle a criminal defendant to select the manner in which the judge is selected for his case and no defendant is entitled to a purely random allotment. The State argues that defendants can only prove a due process violation by showing some prejudice suffered as a result of an error in the selection of the judge; and here, defendants have not shown any prejudice. While acknowledging that the District Attorney has the authority to allege the date or range of dates included in an indictment, the State •points out that the District Attorney does not participate in the assignment of judges for a particular date. The State argues ■that defendants failed to prove any actual manipulation of the allotment procedure by the District Attorney in this case, and, *112 consequently, failed to prove a due process violation pursuant to the holding in Cooper.
In Cooper, the Louisiana Supreme Court reviewed and upheld the allotment method adopted by the 15th Judicial District Court that was composed of three procedures for allotting criminal cases in each of the district’s three parishes. Under this method, the district court éstablished multiple criminal tracks for each parish; and each division of court elected from within that parish was randomly assigned one of the criminal tracks for a designated time period. Cooper, 10-2344, pp. 6-8, 50 So.3d at 121-23. Then, in two of the parishes (Lafayette and Vermillion), the daté of a criminal offense determined the allotment of .the case to the track, and thus division of court, assigned for that time period. Id. Defendant challenged this method of allotment by arguing that it violated the random allotment requirement of La. D.Ct. Rule 14.0 and constitutional principles adopted in. Simpson.
Inin examining the allotment method adopted by the 15th Judicial District Court, the Louisiana Supreme Court stated its well-established position that “proper allotment of a case for adjudication implicates due process' concerns.” The Court quoted from Sim/pson and Reed and synthesized the holdings, stating, “we hold that a rotation or allotment system is not acceptable if the event which triggers application of the system is dependent upon an action taken by the district attorney.” Cooper, 10-2344, p. 10, 50 So.3d at 124, citing State v. Huls, 95-0541, p. 7 (La.App. 1 Cir. 5/29/96), 676 So.2d 160, 167. Applying these principles in Cooper, the Court found that the 15th Judicial District Court had adopted a local method of allotment as allowed under La. D.Ct. Rule 14.0 and that did not conflict with the broad parameters of the uniform rule. The Court stated, “[i]n our goal of ensuring due process is provided to litigants, we have never required an allotment system which was ■purely random.” Then, in considering defendant’s claim that the due process requirements set forth in Simpson required his case to be allotted by a “totally random system,” the Court found that defendant had not raised any allegation that the district attorney had manipulated the allotment of his case and “no basis for the inference that the state was in any way involved in that process.” Cooper, 10-2344, p. 20-21, 50 So.3d at 131. The Court rejected defendant’s claim that the use of the 15th Judicial District Court’s procedure to allot his case was a violation of due process.
Although the Louisiana Supreme Court rejected the due process argument presented by the' defendant in Cooper, the Court expressly upheld the due process principles adopted in Simpson and Reed. The Court, however, did not expressly hold that a showing of actual manipulation of an allotment procedure, and resulting prejudice to defendant, is necessary to prove that an allotment procedure violates | 12due process. In Cooper, the Court noted that defendant made no allegation that the allotment system could be manipulated by the District Attorney; he alleged only that •there was no rational basis for failing to implement a totally .random system. 10-2344, p. 20, 50 So.3d at 131. By contrast, the defendants here allege that the District Attorney has the power to manipulate the allotment, or “choose the judge,” by selecting the oldest date of the offense in the multi-count indictment.
Specifically, defendants have alleged that there is no evidentiary basis for the selection of July 1, 2012 as the starting date for the offense charged against Lic-ciardi in Count 1. In Licciardi’s motion to quash, he argues that the manipulation of *113 the allotment is evident from the State’s discovery responses. In response to his motion for bill of particulars requesting the State to identify the act or acts occurring on July 1, 2012, the State responded that the date and time were not essential to the allegation of the offense in the indictment pursuant to La.C.Cr.P. art. 468. Licciardi also attached an investigative report, from the State’s discovery materials, that includes statements from the alleged victim regarding the alleged criminal offense; he argues that the report does not reveal any basis for an alleged date of offense of July 1, 2012. Defendants argue that this is a sufficient showing that the Orleans Parish Criminal District Court allotment procedure allows the District Attorney to manipulate the allotment of cases; and that no showing of actual manipulation in this particular case is necessary to prove a violation of due process.
We find merit in defendants’ argument. In our review of Louisiana Supreme Court jurisprudence addressing the issue of allotment in pre-trial challenges, we find no explicit requirement for a showing of actual manipulation of the challenged allotment procedures in order for the Court to find a violation of uniform and local | iacourt rules requiring random allotment and due process requirements as set forth in Simpson. See Reed, 653 So.2d at 1176 (“Relator is entitled to enforcement of the court rule without proving actual manipulation in his particular case.”); see also Huls, 95-0541, p. 7, 676 So.2d at 167 (“When the issue of improper allotment has been raised in pre-trial setting, no showing of prejudice has been required for a defendant to successfully raise the issue and to have his case re-allotted under a proper allotment system.”). In our de novo review of the instant writs in light of applicable jurisprudence, we find the defendants have shown that the procedure used in Orleans Parish Criminal District Court for allotting criminal cases where the offense did not occur on a specific date violates the principles of due process as upheld by our Louisiana Supreme Court. Under the circumstances presented, we find the unwritten allotment procedure, which is not reflected or in compliance with the adopted local rule, gives the District Attorney the ability to manipulate the allotment of cases by alleging certain dates in the indictment. Consequently, we find the trial court erred in denying defendants’ motions to quash allotment. In addition, we find that the defendants, Nunez and Licciardi, are entitled to re-allotment of their respective cases in a manner that complies with La. D.Ct. Rule 14.0 and the due process principles adopted in Simpson.
Nunez’s Motion for Bond Reduction
In a separate issue raised solely by Nunez, he argues that the trial court erred in denying his motion to vacate the order increasing his bond from $400,000 to $2.5 million. Nunez contends that the trial court abused its discretion in increasing the bond to an excessive and unreasonable amount and that the trial court failed to consider the factors set forth in La.C.Cr.P. art. 334 for determining the amount of bail.
114Prior to the grand jury indictment charging Nunez and the other two defendants, Nunez was arrested pursuant to an arrest warrant for two charges of aggravated rape. When Nunez first appeared before the trial court on those charges, the trial court set his bond at $400,000. After the filing of the grand jury indictment charging Nunez with two counts of aggravated rape and one count of obstruction of justice, the trial court increased the bond amount. At the hearing on Nunez’s motion for bond reduction, the trial court *114 noted that the increased bond amount was set at the same amount as the bond for the other defendants charged in the indictment. The trial court also noted that Nunez was charged with two crimes of violence that could result in life sentences. At the conclusion of the hearing, the trial court also stated it would be willing to revisit Nunez’s bond at a later time.
Upon review of the trial court’s denial of Nunez’s motion for bond reduction, we find no abuse of discretion and deny Nunez’s writ on this issue.
CONCLUSION
Por all of the foregoing reasons, we grant the writ on the consolidated issue of the allotment of defendants’ cases and we reverse the trial court’s judgments denying defendants’ motions to quash allotment. Finding that the allotment procedure used in this case violates due process principles set forth by the Louisiana Supreme Court, we remand this matter to the Orleans Parish Criminal District Court for the adoption of allotment procedures that comply with the law and jurisprudence discussed herein. We further order the Orleans Parish Criminal District Court to re-allot both defendants’ cases in accordance with such proper allotment procedures.
| i.i;On the second issue raised solely by Nunez, we find no abuse of discretion in the trial court’s denial of his motion for bond reduction and we deny the writ.
WRIT GRANTED IN PART; WRIT DENIED IN PART
TOBIAS, J., concurs.

. See infra n. 5

. The grand jury indictment was returned and signed on December 10, 2014, but it was recorded in open court and filed on December 12, 2014.

. Licciardi first appeared for arraignment on his charged offenses on February 6, 2015, at which time he entered a plea of not guilty.

.Prior to the grand jury indictment, Erik Nunez was previously arrested on the two charges of aggravated rape included in the indictment. At a bond hearing on those charges, Nunez’s bond was set at $400,000. When the grand jury indictment was filed, the trial court raised Nunez's bond to $2.5 million, or $1 million for each charge of aggravated rape and $500,000 for the charge of obstruction of justice.

. Although his motion was entitled Motion to Quash Indictment and/or Strike the Allotment System, Licciardi did not raise a claim of a defect in the indictment. Licciardi argued only that the allotment procedure was not random, violates La.D.Ct. Rule 14.0, and violates due process. The trial court considered and ruled upon Licciardi’s motion as a motion to quash allotment.

. Along with his motion to quash allotment, Licciardi also filed a motion to expedite; the trial court then issued an expedited ruling on Licciardi’s motion to quash without a hearing to allow Licciardi to file a supervisory writ on the issue already before this Court in Nunez’s writ.

. In his motion, Nunez contends that Licciar-di is also charged in a federal indictment for the same criminal conduct charged in Count 1 of the state indictment; but in the federal indictment, the offense allegedly began in January, 2010. The federal indictment referenced by Nunez has not been made part of this record.

. La.C.Cr.P. art. 468 provides in pertinent part, "[t]he date or time of the commission of the offense need not be alleged in the indictment, unless the date or time is essential to the offense. If the date or time is not essential to the offense, an indictment shall not be held insufficient if it does not state the proper date or time.” The allegation of date or time is not essential to the offense of human trafficking. See La. R.S. 14:46.2.