CRICHTON, J.,
additionally concurs and assigns reasons:
■ 1,1 concur in the majority decision. I write separately to emphasize that due process requires a “neutral and detached judge in the first instance.” Concrete Pipe & Prods. Inc. v. Constr. Laborers Pens. Trust, 508 U.S. 602, 617, 113 S.Ct. 2264, 124 L.Ed.2d 589 (1993) (quotation omitted). In my view, the allotment system at issue in this case ' could raise concerns about impartiality. However, the vague, unspecified, and unverified concerns these defendants raise are insufficient to deprive them of a “neutral and detached judge” at trial and therefore, insufficient to rise to the level of a constitutional violation under the facts presented. See State v. Coleman, 1996-1768 (La.7/10/96), 677 So.2d 435 (allotment system must “adequately minimize the risk of docket manipulation by either side”).
Moreover, the allotment procedure at issue does not violate Rule 14.0 of the La. District Court Rules or thé Orleans Parish Criminal District Court method of allotment in set forth in Appendix 14.0A. As the majority points out, defendant Nunez in fact conceded that the method of allotment set forth in Appendix 14.0A fulfills the random allotment requirement. And as to the defendants’ argument that |2the application of the unwritten rule in these circumstances violated Rule 14.0, no party has argued that they lacked notice or did not understand the process.
Importantly, the defendants who fall under this allotment system are not without remedies ip the event a judge demonstrates actual bias. For instance, the defendants may file a motion for recusal *979 specifying reasons therefor; ,La.C.Cr.P. art. 671, et seq. See also, e.g., United States v. Pearson, 203 F.3d 1243, 1261 (10th Cir.2000) (explaining alternatives to finding judicial assignment system .unconstitutional). The defendants can also, seek appellate review of evidentiary or other judgments that the trial judge renders in the course of pre-trial and trial proceedings in the event they disagree with those rulings.
Finally, I emphasize that the office of the district attorney has “the responsibility of a minister of justice and not simply that of an advocate.” Model Rules of Profl Conduct R. 3.8 cmt[l] (Am. Bar.' Ass’n 1983). The United States Supreme Court has noted:
The [prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that .it shall, win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant' of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. -It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use- every legitimate means to bring about a just one.
Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935),
Indeed, this Court has stated that the office of the district attorney is a “quasi-judicial” one, and the district attorney “represents the State; and the State demands no victims. It seeks justice only, equal and impartial justice..,, ” State v. Tate, 185 La. 1006, 171 So. 108,112 (1936). As such, the district attorney should seek to uphold the integrity of the judicial process and ensure he is beyond reproach ^regarding any potential manipulation of the allotment system. It is my view that the district attorney in this case, together with the judges of the Criminal District Court, should reexamine the Orleans Parish system- in cases 'involving multi-count indictments with uncertain offense dates, first, to make certain that there is no reasonable potential for manipulation, and second, to ensure the public’s confidence in a random and fair allotment system.